## Francis Kreiter v. Diana Nichols.

*Prohibitory liquor law : Liability of seller, to wife, etc.: Statute sustained.* The statute (*Session L.*, *1871*, *Vol. 1, p. 363*) giving a right of action to the wife, child, parent, guardian, husband or other person who shall be injured in per'son, property, means of support or otherwise, by any intoxicated person, or .by reason of any intoxication, against any person who, by selling or giving away any intoxicating liquor, has caused or contributed to the intoxication, is held to be valid.

*Intoxicating drinks : Master and servant : Private instructions.* One engaged in the sale of intoxicating drinks is responsible under this statute for the acts of his servants in that business, even though in the particular transaction they disobeyed his instructions, in accordance with the general rules governing the relation of master and servant.

*Prohibitory liquor law : Beer : Stealing : Conversion : Receiving pay for stolen liquor.* But this principle cannot be applied to the case of a person who goes without the permission of any one and drinks another's beer; and the fact that the owner afterwards demanded and received pay for the property, cannot make such owner a wrong-doer in the original trespass on his rights.

*Beer : Property : Conversion : Recovery : Settling.* The statute law, as well as the common law, recognizes beer as property, and the brewing of beer as a lawful business, and protects this property as it does any other lawful product; and any one who steals it, or converts it to his own use, is liable for its value, whatever his motive; and if the owner may recover for it, he may settle for it without thereby sanctioning what was originally done with it.

*Exemplary damages.* Exemplary damages should not be awarded under this statute unless the act of giving or selling the intoxicating drinks was wilful, wanton, reckless or otherwise deserving of punishment beyond what the requirement of mere compensation would impose.

*Submitted on briefs January 7. Decided January 13.*

·Error to Hillsdale Circuit.

*L. N. Keating* and *C. A. Stacy*, for plaintiff in error.

*E. L. Koon* and *A. Dickerman*, for defendant in error.

COOLEY, J.

The defendant in error is the wife of Matthew Nichols, and brought suit in the court below to recover of Kreiter the damages sustained by her in being injured in her means of support through the intoxication of her husband, induced by liquors which she alleged Kreiter had furnished him. The suit was brought under an amendment of the prohibitory liquor law, so-called, which was adopted April 18, 1871 [*Laws 1871, Vol. 1, p. 363*], and which expressly provides that "every wife, child, parent, guardian, husband or other person, who shall be injured in person, property, means of support or otherwise, by any intoxicated person, or by reason of the intoxication of any person, shall have a right of action in his or her own name against any person or persons who shall, by selling or giving away any intoxicating liquor or otherwise, have caused or contributed to the intoxication of such person or persons; and. in any such action the plaintiff shall have a right to recover actual and exemplary damages." The jury awarded the plaintiff five hundred and twenty-five dollars, which we infer was intended to include, not only the actual damages proved, but exemplary damages also.

The evidence tended to show, however, that the intoxicating drinks were not furnished to Nichols by the defendant in person,—at least, as a general thing,—and he called witnesses to prove that he refused to let Nichols have such drinks, and instructed his servants to do the same, which they did.   It appeared, however, that defendant kept a grocery store, at which liquors were sold, and that he was also a brewer of lager beer; and it was not disputed that Nichols procured liquor at the store and beer at the brewery on some occasions.

The circuit judge charged the jury that if Nichols drank beer at the brewery without the knowledge or consent of defendant, this would not be such a selling by defendant as would render him liable under the statute.

But he also charged in substance, that defendant would be liable for the sales made to Nichols by the servants of defendant, even though in violation of his orders, and that if Nichols got beer at the brewery without the knowledge of defendant at the time, but defendant, when he found it out, charged it to Nichols and deducted it from his wages, the defendant would be liable as though he had made the sale originally.

The proposition that one engaged in the sale of intoxicating drinks shall be held responsible for the acts of his servants in that business, even though in the particular transaction they disobeyed his instructions, is in strict accord with the general rules governing the relation of master and servant, and was correctly applied in the present case. No man can be excused from responding for the negligent conduct of his servant because of having instructed him to be careful, or for his frauds because of having told him to be honest. While he is not liable for wrongs which the servant may step aside from his employment to commit, he is fully responsible for the manner in which his business is conducted, and if he gives proper directions he must take upon himself the risk of their being obeyed. But we do not perceive that any such principle can be applied to the case of a person who goes without the permission of any one and drinks another's beer, nor how the fact of the owner demanding and receiving pay for the property can make such owner a wrong-doer in the original trespass on his rights.

By the statute law of this state, as well as the common law, beer is recognized as property, and the brewing of beer is a lawful business. The law protects this property precisely as it protects any other lawful product. If one steals it from the owner, he is punished for it; if he converts it to his own use in any form, a civil action will lie to recover from him the value. And this civil action would not depend in any degree upon the method or purpose of the conversion. Whether destroyed from a belief in its deleterious effects, or

made way with in carousals or private drinking, the legal responsibility to pay for its value would be the same. And it will scarcely be disputed that in this case, if defendant's statement is truthful, he might have recovered from Nichols the value of the beer drank by him at the brewery without defendant's consent, on the same grounds precisely as he might have recovered for any unlawful conversion of other property. But if defendant might lawfully recover for the conversion, he might also lawfully settle for it. He does not thereby sanction what was originally done, but he makes one who has done him a wrong compensate him for the wrong.

Any one who happened for any justifiable reason to have intoxicating drinks in his possession which another appropriated without his consent, might thus demand payment for it without being either legally or morally responsible for the injuries which had resulted from the trespasser making use of it. The trespass being against his will, the wrong to him cannot be converted into a public wrong on his part by his compelling the trespasser to make such redress as the law would compel were it appealed to. On this point we think the court was in error.

We also think the court erred in refusing to instruct the jury that exemplary damages should not be awarded, unless the act of giving or selling intoxicating drinks to the husband of the plaintiff was willful. The term exemplary damages, or as it is sometimes phrased, punitory or vindictive damages, is often very loosely employed in the books, and the controversy over the doctrine which permits the allowance of such damages has been very able and very persistent. But those who go farthest in support of such damages base the right to award them expressly on the willful or wanton conduct of the defendant,—the moral turpitude or atrocity of the act, which renders it proper that damages by way of punishment should be inflicted beyond what could be measured by way of compensation. Thus Mr. Sedgwick says: "The general principle that in

case of *willful* wrong committed by the defendant, the jury have a large discretion to award damages by way of punishment has been asserted in a number of cases."—*Sedgwick on Damages, 454, note.* Mr. Justice Grier says: "It is a well established principle of the common law that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitory or vindictive damages upon a defendant, having in view the enormity of his offense, rather than the measure of compensation to the plaintiff." And again: "In actions of trespass, where the injury has been *wanton and malicious,* or *gross and outrageous,* courts permit juries to add to the measured compensation of the plaintiff, which he would have been entitled to recover had the injury been inflicted without design or intention, something further by way of punishment or example, which has sometimes been called smart money."—*Day v. Woodworth, 13 How., 368.* And in the leading case of *Huckle v. Money, 2 Wils., 205,* Lord Chief Justice Pratt expressed the opinion that the jury had done right in awarding exemplary damages for a trespass committed by direction of the crown officers, and the legality of which they had endeavored to support and maintain in a tyrannical and severe manner. These extracts sufficiently indicate the grounds on which such damages are allowed, and show that they are not to be awarded unless the conduct of the defendant is willful, wanton, reckless, or otherwise deserving of punishment beyond what the requirement of mere compensation would impose.

In this case the parties went to the jury on the evidence with opposing views of what was established by it. The plaintiff claimed to have established a gross case of disregard of her rights on the part of the defendant in person, by the sale to her husband of intoxicating drinks with full knowledge of the probable consequences. The defendant on the other hand insisted, that Nichols procured the liquors either secretly or from servants who in permitting him to have it disobeyed orders. If the plaintiff's view was con-

curred in by the jury, exemplary damages were appropriate ; but if the jury believed the defendant, and were satisfied he had not purposely contributed to the intoxication of Nichols, the damages awarded should have been confined to the actual injury. We find ourselves under the necessity, for the reasons given, of awarding a new trial.

Very numerous exceptions were taken on the trial, the most of which we think require no attention at our hands.

We think the court was quite right in allowing the latitude he did in inquiring into the facts, and in holding the law to be valid.

Judgment reversed, and new trial ordered.

GRAVES, CH. J., and CAMPBELL, J., concurred.

CHRISTIANCY, J., did not sit in this case.